When Congress enacted the Serious Non-Political Crime Bar, it employed the term serious to describe the category of criminal conduct that would exclude immigrants from this country. It did not say any crime, big or small. And Congress did also not to purport to exclude anyone who is merely accused of or arrested for a crime. It requires serious reasons to believe that the petitioner committed the crime in question, a probable cause standard. The statute uses the term serious two times, two layers of protection for petitioners like Mr. Acosta-Franco. And here, neither one of those serious requirements is satisfied. With respect to whether the crime in question, the alleged crime in question, was a serious non-political crime, this court can look to the BIA's opinion in a matter of Ballester-Garcia, where the BIA held, with respect to a robbery crime, that where an offense is against property only, the BIA will consider whether the crime in question involved moral turpitude, the turpitudinous nature of the crime, the value of the property, the length of the sentence, the usual punishment in the United States for comparable crimes. And there, the robbery involved quite a lot of money, it was over 12,000 Cuban pesos. The crime was planned several weeks in advance. It involved the petitioner there entering a property with Confederates past midnight to steal a great deal of money from a business, and was sentenced to 15 years in prison, of which he served eight before being released to exit the country for the United States. Let me ask you a question. Yes. Are you arguing that no reasonable person could find that this was a serious non-political crime that was committed, or are you saying that there is a procedural type error, that things, that the IJ didn't do what he was supposed to do in coming to his conclusion? The latter, Your Honor. And we would submit that this is a question of law that this court may review de novo, and that this court does have jurisdiction to review because it is a question of law. Courts consistently treat questions of whether, what conduct the elements of a crime cover is always a question of law that this court reviews de novo, and in a similar situation in Blandino Medina against Holder, with respect to the particularly serious crime bar contained within the same statute, this court did state that the standard of review is de novo for determining whether the crime in question qualifies as a particularly serious crime. Let me ask you this. What troubles me about this case is this. I know your client claimed that he didn't do this. His story about the, I guess it was the mother and somebody else is highly improbable, but whether that is or not, the reality is after he disclaimed having committed the crime, a Mexican trial court convicted him. He then appealed, and by the way, he was sentenced to four years and three months. He then appealed that, and about two years later, the court of appeal affirmed the sentence. So for purposes of whether committed or conviction, as far as I'm concerned, that's absolutely the same because you had a trial court and a court of appeal that affirmed that that's what happened. What we're talking about here is whether it's serious, and you cited a BIA decision. I'm interested to know your view on how much that fines this court because the reality is anybody that's sentenced to four years and three months in the United States is a really serious crime. They need almost anything over a year as a felony. So I struggle with that. The dollar amount is a little bit small, but do we analyze that from the perspective of the Mexican people, the Mexican legislature, or do we say this is whatever this is in Los Angeles? What governs here? Well, I think the BIA's opinion in Ballester Garcia does speak to that, and I know your honor also had a question about how much weight that should be given in this court, but just to answer that question first, Ballester Garcia specifically states that both can be considered, and that case embraces a case-by-case analysis that says one of the Well, what would the length of a sentence for that be in the United States? And here, the crime of which Mr. Acosta-Franco was convicted was essentially simple theft. I know he referred to it as robbery, but in his testimony, he did state that the crime did not involve the taking of property with force or fear, which are the typical generic requirements for robbery as the BIA in Ballester Garcia recognized. You mean he took it, but no one complained? I don't understand either. Your point, I don't quite understand. Oh, so robbery, the generic elements of robbery generally include the taking of property from a And here, he was convicted of simple theft. Yeah. In order to have robbery, I have to have somebody there that I'm going to threaten? Robbery is the taking of the property, isn't it? Not according to the model penal code and the BIA's opinion in Ballester Garcia. The model penal code defines simple theft as the taking of property of another with intent to either totally or partially, which almost exactly matches up perfectly with the robo statute at issue here, which is simply the taking of property that belongs to someone else, either totally or partially. And that can encompass all kinds of conduct that is very, it can range from very serious, but it can also encompass very nonviolent, low value property as it did in this case. Well, wait a minute, as it did in this case, it's your interpretation of this case. Apparently, the trial court in Mexico didn't think it was just a candy bar that was taken from the rack in a garage in a store. They gave him a substantial amount of time. I don't see how, I'm having difficulty seeing the minimal case you have with what the trial judge saw in the case and gave a long sentence. Can you explain that? Yes, your honor. And I think that does tie into Mr. Acosta-Franco's testimony that he was factually innocent of the crime that he was set up because the boss, his employer, who accused him of the crime, was retaliating against him for reporting him to the Hacienda, which is the equivalent of the Mexican IRS. And that his employer was politically connected and used his connection to the police and the prosecutors. And when he said this in his trial, what did the trial judge do with it? He still gave him the long sentence. That's accurate, your honor. However, the immigration judge in this case found Mr. Acosta-Franco credible. And so this court is bound to accept, and the BIA did not disturb that finding. So this court is- I'm so confused about this. A lot of times you get the IJ saying, well, they're credible. And then later on in their opinion, they'll say, well, this other thing is going on. And then they seem to cut back on their credibility determination. I'm not sure what happened in this case, because he said he was credible in all material respects. But then he goes on and says, well, he was convicted of that, which means to me that he thought, well, maybe he wasn't that credible. And on that point, I find him not credible. So I'm not sure what to do with this strange thing right at the beginning. He's credible in all material respects, and then come out differently. Your honor, I think the way to reconcile that is to observe that the immigration judge treated the conviction as determinative and did not- The immigration judge found that he was convicted of a serious non-political crime, and therefore, that was the end of the story. But the statute actually requires serious reasons for believing that he committed it, not just that he was convicted. I mean, cases where the conviction- But this language, convicted, committed, that's sophistry, isn't it? I mean, as we all seem to I'm sure. Well, I didn't do this. This is what happened, and so on. And they didn't believe him. Neither did the Court of Appeal. So I think what the IJ did there was to credit the Mexican courts, right? They didn't believe the crime. I would definitely push back on that, because the immigration judge did not specifically state that. And in light of the immigration judge's positive credibility determination, we are left with that question of how to reconcile those So do we review this de novo? What do we do? Yes, I would ask this court to review the question of de novo. Are we not, since the abolisher Garcia just seems to have some suggestions, and it doesn't say how many have to be included versus not. It's just some things to be thinking about. But as I understand it, we're reviewing this de novo, and we have this interesting fact that the Mexican government, the Mexican penal system, he committed a serious non-political wrong. Isn't that correct? No, Your Honor. And two points there. Before I run out too much time, I did want to bring in this other fact, which goes to whether he committed it or not, which I think is extremely important as well. In 2008, the record reflects that the Mexican government or the Mexican court actually extinguished, and to use the Mexican term, it was prescribed the sentence. I don't speak Spanish maybe as well as you do, but I speak it pretty well. And it doesn't mean it extinguished it. It just doesn't. He was in the United States. He wasn't available to them to serve. This is basically the equivalent of somebody going in and asking for an expungement of the penal part. They did not relieve him from having been convicted of the crime, did they? I don't think so, Your Honor, actually, because the language of the translated into English, and I think the document is at pages 1048 to 1052 of the record, volume one, and the government's answering brief acknowledges the English translation, which says that the sentence and penal action are extinguished. And so that is one fact that the immigration court did not consider, even though it was brought to the court's attention and the VA's attention repeatedly. What difference does that make for purposes of our analysis of whether he committed the crime? This had to do with his punishment, right? Well, if it extinguishes the penal action, I think that that's something the immigration court needs to resolve, is whether it extinguished just the sentence or not. Isn't the upshot, as far as I've seen, isn't the upshot was they didn't say you're not going to have to go to jail anymore. And he said, it also said that he's declared absolutely free on those charges, is the English translation. And I do want to reserve a little time, but just to wrap up and to fully answer the rest of Judge Smith's question, under INS against Orlando Ventura, the Chenerey Doctrine applies in immigration court matters. And if the immigration court did not rely on the reasoning advance by the government and didn't address the prescription document at all, I believe that remand is required for a resolution of these weighty issues in the first instance. If we, and we'll give you a little extra time, if we looking at this de novo believe what our Spanish tells us, that prescription is expungement at best, but not a, if you will, a complete obliteration of the trial and the appeal record, that doesn't change the fact that he, if you believe that, that he committed a serious non-political crime, right? I'm sorry, one more time. Okay. Well, I'll let you repeat the question. In California all the time, we have a lot of crimes that people have committed and the legislature said, you know what, we're going to change all of these people convicted of these particular crimes. We're going to lower the sentence down to something less than a year. Our court has consistently said that doesn't change our view of whether the crime as originally established was committed. We don't change our ruling on that. Isn't that what we're dealing with here in effect? I don't believe so, Your Honor, because I think under Vega-Anguillano, United States against UCHOA, the BIA decision in Sirhan, Estrada Rosales, and Petersburg, all of those cases instruct that when the basis of the conviction, and the sentence is an important part of the conviction, is vacated, then there's no basis on which to, there's no conviction anymore for purposes of the immigration law. Okay, why don't, we'll give you a little extra time to respond, but let's hear now from the government. Okay. Good morning. Good morning, Your Honors. May it please the Court, Trent McOtter on behalf of Respondent Jeffrey Rosen. I'd like to pick up on that expungement argument that Petitioner's Counsel was just addressing. There's a reason the BIA did not address the expungement argument, and that's because it presented to the BIA. And about 2,600 pages of record, Petitioner references that only in passing, and only using this phrase, subsequently prescribed, which doesn't really have any meaning in English. It's not something that a reader would pick up on. There was no accompanying argument with that point either. Those arguments are built entirely from scratch at this Court, Your Honor. And of course, under this Court's precedent, Barron, if he has a problem. He did mention that somewhere in the proceedings, before he caught the IJ decision, he had mentioned it, correct? As you say, in passing? He says it in passing, Your Honor, right. And it also did not come up at the immigration court hearing, Your Honor. So it's not something that the BIA, in reading the record, would have picked out. I think someone would have to be a particularly exceptional parser to realize that this was an issue before the BIA. And for that reason— I'd like you to straighten out for me this business of, IJ says, I believe him in all material respects after he's told this story about I didn't commit the crime. That's basically what he's saying. I didn't commit the crime. And then he says, I believe him in all material respects. Then he says, but you were convicted. End of story. When it gets to the BIA, they say committed the crime. But the IJ says, I believe him, but he was convicted. End of story. So can the IJ do that? Say, I believe he didn't commit the crime, but because he was convicted, I find that he committed a particularly serious crime? I'm confused by what the IJ did. So you tell me. All right. I have a few responses there, Your Honor. The first response is that this issue wasn't sent to the BIA. It wasn't raised by petitioners. So the court doesn't have jurisdiction to address it. And that's obviously an easy way to avoid having to get into it. On the merits, Your Honor. Sorry, this argument that the IJ found petitioner credible, but yet still denied relief, Your Honor. That issue, I don't believe, was raised to the BIA. Okay. And then on the merits. Okay. And on the merits, Your Honor, I think what the immigration judge did was say, I find petitioner credible in the sense he agrees he was convicted. He agrees it was upheld on appeal. And the conviction provides probable cause of the commission of a crime. Because, of course, that's the real inquiry here. Is there probable cause of the commission of a crime? And so that's what the IJ means when he says all material aspects, Your Honor. And that's also why a paragraph later or two paragraphs later, the immigration judge refers to the conviction as providing the evidence of the commission of a serious non-political crime. I think that's the best way to make it work, Your Honor. Otherwise, the opinion doesn't really make much sense. If the immigration judge says I find him credible in terms of every single word, then the next three or four pages of the opinion are kind of rendered nugatory. There's no point in having them, Your Honor. So I think that's the best way to read it. And, of course, when the BIA got it, I think the other reading would be that the IJ believed his story and then thought the conviction resolved everything. It's possible to read that way, Your Honor. I do think the better way, given the structure of it and given the fact that the judge continued on to these issues about asylum and relief, is to say, as I described earlier, that the immigration judge did find Petitioner credible in the sense that the conviction occurred and was affirmed on appeal. And that conviction, therefore, provides enough evidence of the commission of a crime, Your Honor. I think that's the way to make it work. And the conviction, it seems to me, I don't care that he said robbery. I think what he was really describing was a theft. So I think, Your Honor, the best way to describe it is probably a form of embezzlement. It's property that was entrusted to the Petitioner by his employer. It's something that's more than simple theft. It's not a full-on armed robbery, of course, based on his description. It's something in the middle. And as Justice Kennedy said in the Kenyiris decision, which is cited in our brief, embezzlement is a serious non-political crime under this statute. So I agree we do look to the Petitioner himself described the crime, Your Honor. That's certainly what Ballesterga-Cia says. So in other words, because he was working for the man who made the jeans, who he said said it was okay to take the jeans, that when the tables got turned, he was, in fact, embezzling from his employer. Is that what you're saying? That's what the robo was in this case? I think that's the best way to describe it, Your Honor. Obviously, the Petitioner uses the word robbery, and Ballesterga-Cia says, for common words like that, we don't necessarily just take them at face value, but we should look to what happened. And the fact that he received over a four-year sentence indicates that this must have been something more than just simple theft, Your Honor. I point out just for context that Petitioner's opening brief, footnote 15, says that a serious non-political crime can include one punished by just several years in prison. And also, the record, page 1898, which is a State Department report talking about criminal statutes in Mexico, says that the maximum sentence, just by comparison, maximum sentence for statutory rape in Mexico is four years, unless it involves a very young child. So the point is, this crime was seen in Mexico as something at least as serious as a statutory rape, probably more serious, which indicates it was more than just simple theft going on here, Your Honor. I'm not sure how you do, how you make comparisons across those kinds of crimes. What do you have for robbery? What's the maximum for robbery, for real robbery, with threat of harm in Mexico? Unfortunately, Your Honor, I did not see that in the record. I wish it were there. Maybe it's buried in the 2,600 pages and I missed it, but I did not see that. I would think four years in the United States and four years in Mexico might be different from a judge's point of view about how serious the crime is, because I don't know what judges do in Mexico. So I was looking for something that would help me, other than something as far afield as statutory rape. Well, and the reality is we don't know any of the circumstances, like in the United States, when you had three strikes. We've had cases before the Supreme Court. I forget what it was, a candy bar or something from 7-Eleven got a life sentence, and it was the third strike. So we have some strange ones in the U.S. as well. They've kind of gone down a little bit, but for a time, simple property theft has been considered serious in the United States. And on that point, Your Honor, I will point out, as Petitioner's Counsel said, one of the relevant factors here is whether the crime is turpitude-ness. And this Court has said that even theft with intent to deprive the owner is a crime of moral turpitude under the INA. So just by comparison, Your Honor, even if we say this isn't a robbery, it is just theft, if the intent is to permanently deprive, as I think the Petitioner would agree based on the facts of this case it would have been, then that is a crime of moral turpitude, which is another factor. And if I could, I'd like to address briefly the point about the value of the jeans, Your Honor. Petitioner says it's about 5,000 pesos, not that much money. But again, I think part of this is the context. And the record, page 57, indicates that 5,000 to 6,000 pesos would have paid for almost three years of Petitioner's college tuition. So 5,000 pesos, $300 in America might not seem like that much to us, perhaps, but in Mexico, it might be a large amount of money. And perhaps that is part of the explanation for the lengthy sentence. And the record, page 57, Your Honor, the Petitioner notes what his tuition by semester is. It's about 960 pesos per semester. So I'm just doing the math there, Your Honor, and saying it would be about five or six semesters worth. So it doesn't cost very much to go to school in Mexico. But perhaps it doesn't cost that much. He also said if you run the amount of his rent, Your Honor, it would be about half a year's rent. So this isn't an amount that's, as we said, a candy bar or $50 equivalent to us, Your Honor. It's an amount that buys a lot in Mexico. Maybe that's the way to think of it. And Ballester Garcia, the case that Petitioner relies on, that involved 12,000 or 15,000 Cuban pesos. The equivalent to that is about 450 American dollars. So that case involves a very substantial amount, the BIA says. But by comparison, it's not that much different than the amount here. And I'd also like to return to the standard of review question, Your Honor. The standard of review for whether this is a serious crime is substantial evidence. And this court said as much in Silva-Herrera, which is cited in our brief. And in the analogous inquiry of whether a crime is particularly serious, which is the provision just above this one in 1158, this court said in Blandino-Medina, which is actually the case Petitioner relied on, that this court cannot reweigh the evidence to determine whether a crime is particularly serious. So that certainly sounds like that question of seriousness is one of the facts, one that the obviously Ballester Garcia itself lists a number of very case-specific, fact-specific determinations that would indicate it's a fact determination. Other circuits have said that this is reviewed for substantial evidence. So I think the ultimate question here, Your Honor, is whether there's substantial evidence that there was probable cause that Petitioner committed this crime, which as I've argued before, is a serious crime. And given that he was convicted, given that it was upheld on appeal, and also it's worth pointing out, I think, that his co-defendant, he says, at trial was acquitted due to lack of evidence. So it doesn't sound like a case where he was just railroaded through. Given all of that, I think there's certainly substantial evidence of probable cause, which of course is a relatively low threshold, Your Honor, and then compounded by the deferential standard of review. I think the only other issue that's in the case, Your Honor, is the CAC claim. And I think the briefing adequately covers that. It is independent from these arguments about expungements and the standard of review. I think the BIA adequately addressed all of Petitioner's arguments on those issues. And unless the Court has questions on that claim, I just rest on the brief. Can I understand you correctly to say that there was a co-defendant in this case who was found not guilty? Or was that a different case? Petitioner himself said that in his trial in Mexico, Your Honor, a co-defendant who was found not guilty due to lack of evidence, insufficient evidence. And unless the Court has any further questions, I rest on our brief and ask that the Court deny the petition. Thank you. Very well. Okay. So, Ms. Patrick, we'll give you maybe a minute and a half since the government gave up part of its time here. So why don't you go forward with your rebuttal, please. Thank you. First, on the standard of review, Blandino-Medina states that whether the BIA applied the proper legal standard in determining whether a crime was particularly serious raises a question of law. That's at pages 1342 and 1343. And the Silva-Perera case against Lynch did not have to do with whether the crime qualified as a serious non-political crime. That was conceded there because it involved murder and a money laundering scheme, I believe. Counsel, what is your response to Mr. McCutter's suggestion that based on what your client described what happened, why this is not embezzlement rather than simple theft? Your Honor, that is an argument that is being raised for the first time in oral argument. It was not raised at the immigration level of the BIA or in the briefing in this court. But to address the question on the merits, it was not charged as embezzlement. There is nothing in the record stating what embezzlement is in the Chihuahua Penal Code. The argument, the suggestion— You're saying that Robo does not constitute embezzlement under Mexican law? I'm saying that there's nothing in the record suggesting that it would. You're defying an alleged fact that he worked in his guide, he was told he could take these. If we look at that, that is in the record, right? Yes, Your Honor. And the embezzlement case that the government, that we have in the circuit, I mean, there's a Kenyaris opinion that just states in passing that embezzlement is a serious non-political crime. But the case actually addressing it is Guan against Barr. And that involved a case involving millions of yuan, involving a huge pyramid scheme to defraud investors. And that's consistent with the stated that if it's an extremely large amount of money for robbery or a financial crime, it might qualify. But here, there's just nothing rising remotely to that level. It was essentially the theft of blue jeans. We've given it to make the time. Let me ask my colleague to either of you have additional questions or Ms. Patrick. I have one. Ms. Patrick, your opposing counsel said that you waived any argument that the finding of a belief in all material respects conflicted with the finding of commission of a serious political crime. Is that true? Did you waive that argument? We waived. If he's saying you didn't make the argument that I made, that there was, that I made an argument that isn't there a conflict between saying, I believe him in all material respects after he testified about his version of what happened with the jeans and the finding at the end that the IJ made. And he said, you did not make that argument. Oh, I disagree. We advance that argument or, you know, maybe not so many words, but in pages 51 to 57 of the opening brief on page 20 of the reply brief. And I would also respond. Oh, I see my time has elapsed. So if the court has any further questions. Okay. Any other questions by my colleague? I'm fine. Thanks. Thanks to both counsel. Your argument is very helpful, but we appreciate it. The case of Acosta Bronco versus Barr is submitted.
judges: Wallace, M. Smith, Restani